GEORGE McCULLOCH AND FRANCIS McCULLOCH, APPELLANTS, *v.* QUINCY W. WELLINGTON, RESPONDENT.

21 5|
71 416|

*Estoppel in pais—what facts must concur to create it—when owner not estopped from claiming land by delay in asserting title.*

This was an action of ejectment brought by the plaintiffs to recover certain lands in Corning, to which they claimed title by descent from their father, who died in 1831. The defendants, who had purchased the lands in 1870 and 1871, and made valuable improvements thereon, claimed title through various *mesne* conveyances, from the purchaser at a sale made, in 1833, in pursuance of an order of the surrogate, directing the land to be sold for the payment of the debts of the plaintiffs' father, upon the application of his widow and administratrix. Owing to defects in the proceedings had before the surrogate (which defects appeared upon the face of the records), no title was acquired by the purchaser at such sale.

The plaintiff George, who was four years old at the time of the sale, removed from Corning when he was sixteen years old, went to sea, and remained away for about twenty years, returning to Corning in the fall of 1865, and remaining there until May, 1866, when he went to Michigan, and there resided until after the commencement of this action. His sister, who was about one year and a half old at the time of the sale, had always resided at Corning, not far from the land in dispute. There was no evidence to show that the plaintiffs knew of their interest in the premises, or of the defect in the proceedings before the surrogate, prior to the commencement of this action.

Neither the defendant nor those from whom he claimed had acquired title to the premises by adverse possession.

*Held,* that the plaintiffs were not estopped from claiming the lands, either by reason of their long delay in asserting their title, nor by the fact that the defendant had, relying upon the validity of his title, expended large sums of money in improving the property.

APPEAL from a judgment in favor of the defendant, entered upon the report of a referee.

*Wm. Rumsey,* for the appellant. To establish an estoppel in such a case, it must be shown that the party sought to be estopped has been silent when he ought to have spoken. (Bigelow on Estoppel [2d ed.], 452, *et seq.; Taylor* v. *Ely,* 25 Conn., 250, 260; 2 Smith Lead. Cas., 738; Herman on Estoppel, §§ 409, 419, 421.) That he acted or made the representation with knowledge of the

fact, or that he kept silence with such knowledge. (*Whitaker* v. *Williams*, 20 Conn., 88, 104; Bigelow on Estoppel, 437, 467; Herman on Estoppel, § 414; *Finnegan* v. *Carraher*, 47 N. Y., 493, 500; *Bank of Hindustan* v. *Alison*, L. R. 6 C. P., 54, 222.) That the party setting up the estoppel was also ignorant of the facts, or of any convenient or available means of acquiring knowledge thereof. (*Brant* v. *Va. C. & I. Co.*, 93 U. S. 326; S. C., 16 Am. L. Reg. N. S., 403; Bigelow on Estoppel, 437; *Calkins* v. *B. & R. Gaslight Co.*, 1 T. & C., 541, 546–7; Herman on Estoppel, §§ 410, 414.) That the party setting up the estoppel has changed his situation in reliance on the conduct of the other party. (Bigelow on Estoppel, 437, 492; Herman on Estoppel, §§ 415, 425; *Malloney* v. *Horan*, 49 N. Y., 111, **115**; *Trimble* v. *Strother*, 25 Ohio St., 378; 2 Smith Lead. Cas., 739.) That the act done was such, and so done as to be calculated to mislead the party relying on it. (Herman on Estoppel, § 418; *Continental National Bank* v. *National Bank of Commonwealth*, 50 N. Y., 575; *McAfferty* v. *Conover*, 7 Ohio St., 99; 2 Smith Lead. Cas., 739, 740; *Gore* v. *White*, 20 Wisc., 448. Ignorance as to the state of the title cannot be presumed to raise an estoppel where the defect is apparent on the record, and where each party has the same means of ascertaining the truth. (1 Smith Lead. Cas., 833 [11th ed.], marg., 617, and cases cited; *Hale* v. *Skinner*, 117 Mass., 474; *Hill* v. *Epley*, 31 Penn. St., 331; *Boggs* v. *Merced Mining Co.*, 14 Cal., 279.) The plaintiffs had no knowledge of the defect. To estop one who simply stands still, doing nothing, there must be knowledge of his rights. (*Henshaw* v. *Bissel*, 18 Wall., 255, 271; *Whitaker* v. *Williams*, 20 Conn., 98, 103–4; *Fay* v. *Valentine*, 12 Pick., 40, 46; *Bragg* v. *B. & W. R. R. Co.*, 9 Al., 54, 61; *Preston* v. *Mann*, 25 Conn., 118, 129; *Gove* v. *White*, 20 Wisc., 447; *Biddle Boggs* v. *Merced Mining Co.*, 14 Cal., 279; *Wood* v. *Wilson*, 37 Penn. St., 379; *Junction R. R. Co.* v. *Harpold*, 19 Ind., 347; Herman on Estoppel, §§ 435, 442; 1 Story Eq., § 391.

*George T. Spencer*, for the respondent. The plaintiffs having stood by, one of them twenty-six and the other twenty-three years, after becoming of age, and seen sales and transfers of parts of this

property, and expensive improvements made thereon, and a general course of dealing with the property on the faith of the title derived through the sale made by order of the surrogate, are estopped from now claiming it. (*Higinbotham* v. *Bennett*, 5 Johns. Ch., 184; *Wendell* v. *Van Rensselaer*, 1 Johns. Ch., 344, 353; *Favill* v. *Roberts*, 3 Lans., 14, 25; 50 N. Y., 222; *Dougrey* v. *Topping*, 4 Paige, 94; *Thompson* v. *Blanchard*, 4 Com., 303; *Wood* v. *Seely*, 32 N. Y., 105; *Hogan* v. *City of Brooklyn*, 52 N. Y., 282; *Brown* v. *Bowen*, 30 N. Y., 679; *Evans* v. *Snyder*, 64 M. O., 516; *Manufacturers & Traders' Bank* v. *Hazard*, 30 N. Y., 226, 230; *Brookman* v. *Metcalf*, 4 Robt., 568; *Continental Bank* v. *National Bank, &c.*, 50 N. Y., 575; *Blair* v. *Waite*, 69 N. Y., 113; *Stone* v. *Barker*, 6 Johns. Ch., 166; *Tilton* v. *Nelson*, 27 Barb., 595.) The negligence of a party in ascertaining his legal rights, where he has the opportunity, is equally effectual to estop him from asserting them against a party who has been misled thereby, as silence with regard to them with knowledge. (*Calhoun* v. *Richardson*, 30 Conn., 210; *Cady* v. *Owen*, 34 Vt., 598; *Gregg* v. *Wills*, 10 Ad. & El., 90; *Wilder* v. *St. Paul*, 12 Minn., 192; *Henshaw* v. *Bissell*, 18 Wall., 255, 271.) Nor is it any answer to say that the defendant might have obtained the necessary information as to defects of title by an inspection of the record. (*Mattoon* v. *Young*, 45 N. Y., 696, 702.) Ignorance of fact will in some cases not prevent the operation of an estoppel. (*Kingsley* v. *Vernon*, 4 Sandf., 361; *Petrie* v. *Fleeter*, 21 Wend., 172.)

TALCOTT, P. J.:

This is an appeal from a judgment for the defendant entered on the report of a referee in an action of ejectment.

The history of the plaintiffs' claim is as follows:

In 1803 George McCulloch became the owner of a tract of land containing about ninety-eight and a half acres, situate in what is now the village of Corning, in Steuben county. He occupied this tract with other lands, in all about two hundred acres, until his death, which happened in 1826. He left him surviving five children, of whom George McCulloch, the father of the plaintiffs, was one. The father of the plaintiffs died in 1831, and in an action of

partition brought in the Steuben Common Pleas, judgment was entered, June 20, 1832, setting off to the plaintiffs, in right of their father as one of the heirs at law of his father, the original grantee, sixty-four acres, parcel of the ninety-eight acres.

The action is brought to recover lots known as 7, 8 and 15, situated on that tract of sixty-four acres.

The defendant claims title through sundry *mesne* conveyances, from a sale and conveyance of the said sixty-four acres, as a part of the real estate of the said George McCulloch, the father of the plaintiffs, made for the payment of his debts in 1833, by Sophia McCulloch, his widow and administratrix, by order of the Surrogate of Steuben county. The proceedings for a sale of the property, under the order of the surrogate, were objected to on various grounds, claimed to affect the jurisdiction of the surrogate.

The referee finds as a conclusion of law : " That said surrogate's court acquired jurisdiction of the subject-matter of the said proceedings, to mortgage, lease or sell the real estate of said George McCulloch, deceased, for the payment of his debts, but not of the persons of said plaintiffs, . . . and that said Rufus Gorton, and those claiming under him, acquired no title under the conveyance by said administratrix to him, based on those proceedings."

Rufus Gorton was the purchaser at the said administratrix's sale, and the defendant Wellington claims under Gorton by virtue of that purchase and sale. As there appears to have been no objection or exception taken by the defendant to the finding and conclusion of law in that behalf, it is unnecessary to examine more particularly the grounds upon which such findings and conclusions of law were based.

The referee also found as a conclusion of law : " That the defendant has not acquired any right to hold the possession of the premises described in the complaint or any of them, by adverse possession."

But the referee also finds : " That the said plaintiffs, by reason of the facts proved on the trial of this action, and heretofore found, are *estopped* from denying the title of the said Rufus Gorton, and of said defendant, derived from him, to said pieces or parcels of land in the complaint in this action described, or any or either of

them, or any part thereof, and from claiming the possession thereof, or any part thereof, or any interest therein."

And upon this ground the referee directed a judgment for the defendant in the action, and the question thus presented is, as we understand it, the only question open for our consideration.

The respective ages of the two plaintiffs at the time of the said sale under the surrogate's order, were as follows: The plaintiff George was of the age of four years, and the plaintiff Francis E. was of the age of one year and a half, and they were the only children and heirs at law of their father.

The plaintiff George removed from Corning when he was fifteen or sixteen years old, and went to sea, and was absent about twenty years. He then came to Corning, and remained there some eight months, when he removed to Michigan, where he continued to reside till after the commencement of the suit. Francis McCulloch, the other plaintiff, became twenty-one years of age in June, 1852, and during most of the time afterwards lived within one or two miles of the property in question.

The referee has held that the plaintiffs are estopped to set up a claim of title to the land in question, because during the time since the sale by the administratrix, streets and lots have been surveyed and laid out, embracing the land included in the sixty-four acres, and upon the ground that the premises have been held and claimed by Rufus Gorton, the purchaser at said sale, and those claiming under him, from the time of the conveyance to him, under the title assumed to have been so acquired, and that sundry erections have been made on other parts of said tract, under the said title; and that the defendant took a conveyance and possession of said lots, numbers 7 and 8, in the complaint mentioned, on October 22, 1870, and of lots 1 and 15, in said complaint mentioned, on May 3, 1871, and during the latter year built a large and valuable house and barn on said lots, which, with other improvements put thereon, have cost some $25,000. Relying, in the making of such improvements and expenditures, upon the title to said lots of the "Corning Company" which had been acquired and held by him, and not knowing or having any information of what are now claimed as defects in said title:

In other words, the referee has held that the plaintiffs have forfeited their title to the estate, not by reason of any statute of limitations nor adverse possession, not by reason of any specific acts or declarations by them or either of them tending to encourage the defendant, or any of his predecessors, in the title, in the belief that their title was good, not by any specific acts or conduct which would render it inequitable for the plaintiffs now to deny that the title supposed to have been acquired under the sale by the administratrix was valid and effectual, but simply from their neglect to assert their rights during this lapse of time. To sustain his conclusion of law on this subject, the referee has furnished an elaborate opinion, and cited many cases claimed to have a bearing on the question, and to uphold his decision.

It will be more convenient, in the examination of the subject, to refer to the well-established rules regarding *estoppels in pais*, as derived, by the elementary writers on the subject, from the cases cited and from many others, than to undertake a critical examination of the cases cited; and for this reason reference will be had to the standard modern works of Mr. Bigelow and Mr. Herman on the law of estoppel, as embracing the law of *estoppel in pais* as acknowledged and administered at this day, when the law on this subject has come to be better understood and more frequently administered than formerly.

In the treatise of Mr. Bigelow we find stated, under the heading of "estoppel by conduct," the following statement of the principles out of which the law had its origin and upon which it rests:

" The origin of the peculiar branch of estoppel now to be considered, that by which a party and those in privity with him are estopped to deny the truth of representations made *to* and *acted upon* by another, we conceive to be found in the doctrine of equity, that if a representation is made to another, who deals on the faith of it, the former shall make the representation good, if he knew it to be false. . . In order to justify the interposition of equity in the case mentioned, it is necessary to establish not only the fact of misrepresentation or concealment, but also that it has been in a matter of substance or importance to the interests of the other party, and that it has actually misled him. For, if the misrepresentation was

of a trifling or immaterial thing, or if the party alleging it did not, in fact, trust to it, or was not misled by it, or if it was *vague or inconclusive in its nature,* or if it was upon a matter of opinion or upon a fact equally *open to the knowledge of both parties,* and in regard to which *neither could be presumed to trust the other ;* in these and in like cases it is said that equity will not grant relief.

"We shall see in the course of the present chapter that these matters are the key to the question of *estoppel in pais,* and we shall find here the true extent and limits of the doctrine." (Bigelow on Estoppel, 473.)

The same author lays down the following five cardinal rules, applicable to the law of *estoppel in pais,* as extracted from all the cases, saying that "*all* the following elements must be present in order to an estoppel by conduct," viz. :

1. There must have been a *representation* or *concealment* of material facts.

2. The representations must have been with *knowledge of the facts.*

3. The party to whom it was made must have been *ignorant of the truth of the matter.*

4. It must have been *made with the intention that the other party* should *act upon it.*

5. The other party must have been induced to act upon it. (Bigelow on Estoppel, 480.)

The same rules, in substance, are laid down in Herman's Law of Estoppel. Amongst other things, Herman says :

"The estoppel does not apply where everything is equally well known to both parties, or where the party sought to be estopped was *ignorant of the facts* out of which his rights arose, . . . to enable a man to set up title by estoppel the party must have been ignorant of the true state of the title at the time he took it, or been *without the means of ascertaining it by reference to records.*" (Herman on Estoppel, § 422.)

Again : "No man can set up another's act or declaration as the ground of an estoppel, unless he has himself been misled or deceived by such act or declaration ; nor can he set it up where he

.had the same means of knowledge as to the truth of the statement, as the other party." (Id., § 430.)

The principles which estop a man from claiming what is conceded to be his own property, are highly penal in their character, and should not be enforced unless there is a concurrence of circumstances, such as are necessary to the creation of an equitable estoppel.

It must appear that he was *acquainted with his title*, and willfully concealed or misstated it ; for it would be gross injustice in construing ignorance or misapprehension of the true nature of a right into a forfeiture of a power to enforce it. It should also be shown that the language or conduct of the owner was the *direct motive or inducement to the outlay or expenditure* of the person who purchased the land or made the outlay, so as to afford a just ground for the inference that the wrong done by the former occasioned the loss incurred by the latter. "*Ignorance of the true state of the title on the part of the purchaser must concur with willful misrepresentation or concealment on that of the vendor.*" (Id., § 425.)

An examination of these various rules regulating the law of *estoppel in pais*, and a comparison with the facts in this case, will, we think, demonstrate the error of the referee in holding that the plaintiffs are estopped from setting up their title as against the defendant.

When Wellington purchased the premises in 1870 and in 1871, they were vacant and unoccupied ; and the referee expressly finds that no adverse possession existed sufficient to bar the plaintiffs' title.

The referee found, in response to the third request of the plaintiffs' counsel, that: "The failure of the surrogate's court to acquire jurisdiction to cause a sale to be made of the lands of the plaintiffs was apparent on the face of the papers on file in the surrogate's office," to wit, in the order to show cause, and might have been discovered by an examination thereof, but he refused to find that the plaintiffs had no knowledge of any defect in the proceedings in the surrogate's court. It does not matter that he refused so to find. There was no evidence tending to show that the plain-

tiffs, or either of them, had any cognizance of any defect in the surrogate's proceedings.

There is no presumption that they did know of any such defect. They were infants at the time when the order for the surrogate's sale was obtained, of such tender years, that they cannot be presumed to have had any knowledge or information concerning the proceedings.

One of the plaintiffs, George McCulloch, left the vicinity while yet a minor, and went to sea and remained absent for twenty years, after which time he returned and lived, from August, 1865, till May, 1866, within "one or two miles" of the premises in question. The other has, for most of the time, lived within "a mile or two" of the premises. Their father was not, as we understand the facts, in the absolute occupancy of the premises at the time of his death ; and, for aught that appears, the plaintiffs never had any knowledge, until about the time of the commencement of the suit, that their father ever had any interest in the premises.

The title under which Wellington claims was a hostile title, and the presumption that every man is cognizant of the defects in his own title, if any such presumption could be indulged for the purpose of raising an *estoppel in pais*, can have no application to the plaintiffs, as the defect, if any, is not in their title, but in that of their adversary, and such presumption, if any, exists only as to the latter.

Notwithstanding, therefore, the refusal of the referee to find that the plaintiffs were ignorant of the defect in the defendant's title, it is to be presumed they were so, as there is no evidence tending to show the contrary, and knowledge of the defect on the part of the plaintiffs is an affirmative fact to be established by evidence, or at least by presumption, before their silence in respect thereto and *non-claim* can be imputed as fraudulent.

The non-assertion of their title by the plaintiffs did not occur with knowledge, either in fact or presumptively, of those circumstances which the referee has found rendered the paper title of the defendant invalid. On the other hand, the defendant had a full opportunity to become aware of the defect in his own title by a resort to the ordinary precautions taken by purchasers of real estate, for the

referee finds that the defect in the title was apparent from the record which constituted a part of his chain of title.

It is claimed that the defendant in this case relied, in making the purchase, on the general reputation which is alleged to have prevailed at Corning, that the title of the "Corning Company" through whom the title had passed, was valid, and therefore omitted those particular investigations which are customary in such cases.

It is not claimed that the plaintiffs by any acts or declarations of theirs had in any way voluntarily aided in creating the impression as to the validity of the title of the "Corning Company."

It is the ordinary case of a purchaser who, from his confidence in the vendor, or from other circumstances not imputable to the claimant, has purchased property and omitted to make the necessary and ordinary examination of title. In such a case the law affords no redress except upon the covenants for title which the purchaser has taken at the time of his purchase.

There was no evidence tending to show that the plaintiffs willfully or fraudulently concealed their title. For aught that appears, the plaintiffs have omitted to assert their title during this long period of time simply because they themselves were ignorant of its existence, or that they ever had or could claim any interest in the premises.

Statutes of limitations sometimes to the ordinary apprehension appear to operate harshly, but in most cases the harshness of their operation is in cutting off claims otherwise valid, rather than in the contrary direction. But such statutes are enacted in pursuance of a general policy which deems it more conducive to justice in general to fix a certain specific time during which a party having title to lands may repose upon that title in the absence of any adverse possession or any positive fraud on the part of the claimant, than to leave it to the varying discretion of any tribunal to hold that the owner has forfeited his rights by a mere *non-claim*, or upon the idea of an *equitable estoppel in pais* where the owner has done nothing but simply neglect to assert his title within a period to which the Statute of Limitations does not apply.

It seems to us that the conclusion of the referee in this case has only the effect of creating a new statute of limitations, by which

title to real estate is forfeited by a mere neglect to assert it, under circumstances, under which the legislature has not made it necessary that it should be asserted in order to save its forfeiture; and while the ingenuity of the reasoning of the referee is conceded, we cannot assent to the soundness of his conclusions as matters of law.; and, therefore, the judgment must be reversed, and a new trial ordered before another referee, costs to abide the event.

Present—TALCOTT, P. J.; SMITH and HARDIN, JJ.

Ordered accordingly.